IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KELSIE BRANSTETTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19-cv-2596 |
| ) | |
| HOLLAND AMERICA LINE N.V., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## ORDER

Plaintiff Kelsie Branstetter brings claims for negligence, unseaworthiness, and failure to pay maintenance and cure[1] under general maritime law and the Jones Act, 46 U.S.C. § 30104. (Compl., ECF No. 1.) Before the Court is Defendant Holland America Line N.V.'s ("HAL") Motion to Dismiss for Lack of Jurisdiction, filed October 4, 2019. (ECF No. 15.) Branstetter responded on October 30, 2019. (ECF No. 21.) HAL replied on November 13, 2019. (ECF No. 23.)

---

[1] Maintenance is a seaman's day-to-day living expenses. Cure is the seaman's medical costs. When a seaman is injured on board a ship, employers are obligated to pay maintenance and cure until the seaman is fit for duty, or until she has reached a point where additional medical treatment will not help her. See Calmar S.S. Corp. v. Taylor, 303 U.S. 525 (1938).

For the following reasons, the Court lacks personal jurisdiction and TRANSFERS this action to the United States District Court for the Western District of Washington.

## I.  Background[2]

In March 2017, Branstetter was a seaman employed as an Image Creator (photographer) on board a cruise ship, the MS NOORDAM. (Compl., ECF No. 1 ¶ 9.)  Sometime between March 16 and March 19, 2017, while descending a staircase in the dining room of the MS NOORDAM, Branstetter fell and sustained injuries.  (Id.)  In May 2017, after working long hours on the MS NOORDAM, Branstetter sustained other injuries to her foot.  (Id. ¶ 10.)  These incidents left Branstetter with injuries to her lower back, left leg, left ankle, and left foot.  (Id. ¶¶ 9, 10, 17.)  On May 21, 2017, as a result of her injuries, Branstetter was declared medically unfit for duty and was sent home to Memphis, Tennessee, for medical treatment.  (ECF No. 21-1 ¶ 8.)  During Branstetter's employment with HAL, HAL arranged and paid for all of her travel to and from Memphis, Tennessee.  (Id. at ¶ 15.)  HAL also made Branstetter's travel arrangements and paid for her travel-

_____

[2] Because this Court has not conducted an evidentiary hearing on the issue of personal jurisdiction, the Court will not consider facts offered by HAL that conflict with those offered by Branstetter.  See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (citing Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989)).

related expenses on her return home to Tennessee after she had been declared medically unfit. (Id. ¶ 9.)

All of Branstetter's medical treatment for her relevant injuries has been in Tennessee. (Id. ¶ 10.) HAL has selected every medical provider who has treated Branstetter for her injuries, with the exception of her current treating physician, Dr. Dean Jameson, who was selected by Branstetter but approved by HAL. (Id. ¶ 12.) HAL has paid for all of the medical treatment Branstetter has received. (Id. ¶ 11.)

The MS NOORDAM is registered under the laws of the Netherlands. (ECF No. 15-1 ¶ 4.) The MS NOORDAM sails primarily in international waters and has never sailed in the waters of Tennessee. (Id.)

HAL is the operator of the MS NOORDAM. (ECF No. 1 ¶¶ 2, 4; No. 15-1 ¶ 4.) HAL is a company organized under the laws of Curacao. (ECF No. 1 ¶ 3; No. 15-1 ¶ 3.) HAL's corporate office is in Seattle, Washington. (ECF No. 1 ¶ 3; No. 15-1 ¶ 6.) HAL is authorized to do business and has a registered agent for service of process in Tennessee. (ECF No. 1 ¶ 3; No. 15-1 ¶ 5.) HAL sells cruises to residents of all 50 states. (ECF No. 15-1 ¶ 5.) Decisions about the issuance of maintenance and cure are made at HAL's corporate headquarters in Seattle, Washington. (Id. ¶ 6.)

## II.  Standard of Review

HAL moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  (ECF No. 15.)  Neither party contests the Court's subject-matter jurisdiction.[3]

When a defendant challenges personal jurisdiction under Rule 12(b)(2), "[t]he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant."  Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005).  A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [a defendant] and the forum state to support jurisdiction.'"  Neogen Corp. v. Neo Gen Screening, Inc., 282 F. 3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).  A plaintiff may not rest on her pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction.  Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012).  Because the Court is relying solely on written submissions and affidavits to resolve this Motion, Branstetter's burden to establish a prima facie showing of personal

---

[3] Under 28 U.S.C. §§ 1331 & 1333, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States" and "[a]ny civil case of admiralty or maritime jurisdiction, . . ."  Branstetter asserts claims under the Jones Act and admiralty law.  (Compl., ECF No. 1 ¶ 5.)  The Court has subject-matter jurisdiction.

4

jurisdiction is "relatively slight."  Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988)).  The Court construes the facts in the light most favorable to Branstetter.  See id. (citing Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991)).

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a federal court looks first to the long-arm statute of the state in which it sits to determine the state's limitations on personal jurisdiction.  See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998).  The court then assesses whether the exercise of personal jurisdiction, if any, would be appropriate under the Due Process Clause of the Fourteenth Amendment.  Fed. R. Civ. P. 4(k)(1)(A); see Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

## III. Analysis

The jurisdictional limits of Tennessee law and federal due process are identical.  See Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); First Cmty. Bank, N.A. v. First Tenn. Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015); Tenn. Code Ann. § 20-2-223(a)(6).  The Court need only decide whether exercising personal jurisdiction over HAL is consistent with federal due

process requirements. Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003).

The Due Process Clause requires that a non-resident defendant have at least "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection (or lack thereof) between the claim and the forum. Maxitrate Tratamento Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir. 2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)). Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997)

(quoting <u>Helicopteros Nacionales de Colombia S.A v. Hall</u>, 466 U.S. 408, 414-15 & nn.8-10 (1984)).

## A. General Jurisdiction

A court may assert general jurisdiction over a defendant and hear any and all claims against it when its connections with the forum state are so "continuous and systematic" as to render it essentially "at home" in the forum state. <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (citing <u>Int'l Shoe</u>, 326 U.S. at 317). A corporation's principal place of business and place of incorporation are "paradigm . . . bases for general jurisdiction." <u>Daimler</u>, 571 U.S. at 137 (internal citations and alteration omitted). <u>Daimler</u> and <u>Goodyear</u> brought a "sea change" to the general jurisdiction analysis. <u>BNSF Ry. Co. v. Tyrrell</u>, 137 S. Ct. 1549, 1560 n.1 (2017) (Sotomayor, J., concurring in part and dissenting in part); <u>see also</u> <u>Glob. Force Entm't, Inc. v. Anthem Sports & Entm't Corp.</u>, 385 F. Supp. 3d 576, 581-82 (M.D. Tenn. 2019) (discussing change in depth), <u>appeal denied, decision amended</u>, No. 3:18-CV-00749, 2019 WL 3288474 (M.D. Tenn. July 22, 2019). Since <u>Daimler</u>, there must be an "exceptional case" for a court to assert general jurisdiction over a corporation in a forum "other than its formal place of incorporation or principal place of business . . . ." 571 U.S. at 139 n.19.

Both parties agree that HAL is a company organized under the laws of Curacao, (ECF No. 1 ¶ 3; No. 15-1 ¶ 3), and that HAL's principal place of business is in Washington. (ECF No. 1 ¶ 3; No. 15-1 ¶ 3.) The Court does not have general jurisdiction over HAL on those "paradigm bases."

Branstetter argues alternatively that HAL made itself "at home" in Tennessee by: (1) recruiting, hiring, and employing Tennessee residents to sell its cruises in Tennessee;[4] (2) forming and maintaining ongoing business relationships in Tennessee;[5] (3) being authorized to do business and having a registered agent in Tennessee;[6] (4) selling cruises to Tennessee residents; (5) making and paying for all of Branstetter's travel arrangements and travel-related expenses to and from Tennessee throughout her employment with HAL; (6) selecting Branstetter's medical professionals and making decisions about her medical treatment in Tennessee; and (7) paying Branstetter's maintenance

---

[4] Branstetter asserts that she has seen job listings by HAL on LinkedIn.com for Sales Agent and Cruise Consultant positions in Tennessee. (ECF No. 21-1 ¶¶ 17-19.)

[5] Branstetter asserts that HAL has entered into continuing contractual relationships with some Tennessee companies, including the Grand Ole Opry and B.B. King's Blues Club. (ECF No. 21-1 ¶¶ 20-24.)

[6] Although germane to the full general jurisdiction analysis, the designation of an agent in compliance with a service-of-process statute does not automatically establish personal jurisdiction. See Pittock v. Otis Elevator Co., 8 F.3d 325, 329 (6th Cir. 1993). Branstetter recognizes as much. (See ECF No. 21 at 8.)

and cure in Tennessee.[7] (See ECF No. 21 at 4-10.) Branstetter's arguments are not persuasive.[8]

These activities are not enough for HAL to be considered "at home" in Tennessee. "A corporation's continuous activit[ies] of some sorts within a state . . . [are] not enough to support the demand that the corporation be amendable to suits unrelated to that activity." Goodyear, 564 U.S. at 927. "A corporation that operates in many places can scarcely be deemed at home [for purposes of general jurisdiction] in all of them. Otherwise, 'at home' would be synonymous with 'doing business' . . . ." Daimler, 571 U.S. at 139 n.20.

HAL's contacts with Tennessee are less than the forum-related contacts of defendants in cases where courts have found a lack of general jurisdiction. See, e.g., BNSF, 137 S. Ct. at 1558 (holding that Montana lacked general jurisdiction over the defendant railroad, although it had 2,000 miles of railroad track in Montana; employed more than 2,000 workers there; and maintained a facility there); Daimler, 571 U.S. at 136-39

---

[7] The Court need not address HAL's evidentiary objections to some of Branstetter's exhibits because the Court does not rely on them in reaching its conclusion. (See ECF No. 23-1 at 1-19.)

[8] Some of Branstetter's arguments are more relevant to the Court's specific jurisdiction analysis. See infra, at 14-15. "[T]ies serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant . . . . " See Goodyear, 564 U.S. at 927 (citation omitted and emphasis in original).

(holding that California lacked general jurisdiction over defendant although it operated multiple California-based facilities; it was the largest supplier of luxury vehicles in California; and its in-state sales accounted for 2.4% of its sales); Helicopteros, 466 U.S. at 414-16 (no jurisdiction over foreign corporation that sent officers to forum for a negotiating session; accepted checks drawn from a forum bank; purchased equipment from the forum; and sent personnel to the forum to be trained); Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990) (no jurisdiction over defendant cruise line when its contacts with Washington included advertising in the local media; mailing brochures; paying commissions to travel agents; conducting promotional seminars; and selling vacation cruises to Washington residents), rev'd on other grounds, 499 U.S. 585 (1991).

This is not an "exceptional case" where a finding of general jurisdiction in a forum other than the defendant's place of incorporation or principal place of business would be appropriate. See Daimler, 571 U.S. at 139 n.19. The Court lacks general jurisdiction over HAL.

### B. Specific Jurisdiction

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."

Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citations omitted). The Sixth Circuit has established a three-part test for determining whether there is specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968); see also AlixPartners, LLP v. Brewington, 836 F.3d 543, 549-50 (6th Cir. 2016); Harmer v. Colom, 650 F. App'x 267, 272 (6th Cir. 2016).

To analyze specific jurisdiction, the Court must consider each asserted claim. Bd. of Forensic Document Examiners, Inc. (BFDE) v. Am. Bar Ass'n, No. 16-CV-2641-JPM-tmp, 2017 WL 549031, at *3 (W.D. Tenn. Feb. 9, 2017) (citing SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft, 563 F.3d 211, 220 (6th Cir. 2009) (White, J., concurring)). Branstetter does not address why the Court has specific jurisdiction over each individual claim, but asserts many different reasons that the Court has personal jurisdiction generally. The Court analyses Branstetter's arguments for jurisdiction as they relate to each of her claims.

## 1. Negligence and Unseaworthiness

This Court does not have specific jurisdiction over Branstetter's negligence and unseaworthiness claims. Branstetter's claims of negligence and unseaworthiness do not "arise from [HAL]'s activities" in Tennessee, nor do they arise from "an activity or an occurrence that t[ook] place in [Tennessee]." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 137 S. Ct. 1773, 1781 (2017); Mohasco, 401 F.2d at 381.

"In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers, 137 S. Ct. at 1781 (alteration in original) (quoting Goodyear, 564 U.S. at 919). The connection between the in-state activity and the cause of action must be "substantial." Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp., 692 F.3d 469, 472–73 (6th Cir. 2012). "The 'arising from' element" of specific personal jurisdiction "is not satisfied unless 'the operative facts of the controversy arise from the defendant's contacts with the state.'" Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC, 192 F. Supp. 3d 824, 830 (E.D. Mich. 2016) (citing Calphalon Corp. v. Rowlette, 228 F.3d 718, 723 (6th Cir. 2000)).

Generally, a defendant's conduct that occurs outside the forum state, but affects a plaintiff who has connections to the forum state, is not enough to establish specific jurisdiction. See Bristol-Myers, 137 S. Ct. at 1781-82 (citing Walden, 571 U.S. at 291); Reynolds v. Int'l Amateur Athletic Fed'n, 23 F.3d 1110, 1120 (6th Cir. 1994); cf. MAG IAS Holdings, Inc. v. Schmuckle, 854 F.3d 894, 901 (6th Cir. 2017) ("[A]n out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment.") (citing Walden, 571 U.S. at 286-87). Branstetter concedes that her injuries arose from incidents that occurred during her time onboard the MS NOORDAM. (See ECF No. 1 ¶¶ 9-17.) She does not assert that the MS NOORDAM was in Tennessee waters during that time. Her negligence and unseaworthiness causes of action did not arise from HAL's activities in Tennessee. She cannot establish specific jurisdiction over those claims. See Mohasco, 401 F.2d at 381; Harmer, 650 F. App'x at 272 (affirming district court's finding of no specific jurisdiction when the "actions alleged to have harmed the [plaintiffs] in Tennessee arose from [the defendant's] actions in Mississippi"); Maxitrate Tratamento, 617 F. App'x at 409 (holding that there was no specific jurisdiction where the accident on which the underlying lawsuit was based occurred "a continent away"); Pittock v. Otis Elevator Co., 8 F.3d 325, 328 (6th Cir. 1993) (holding that an Ohio court did not have personal

13

jurisdiction when the injuries and alleged negligence occurred in Nevada).

Branstetter argues that HAL's hiring her, a Tennessee resident, and HAL's payment for her travel between the MS NOORDAM and Tennessee before her injuries, creates a sufficient affiliation among Tennessee, HAL, and her negligence and unseaworthiness claims.[9] (ECF No. 21 at 8.) Any connection is "attenuated" at best and is not the "substantial connection" necessary to support jurisdiction over HAL. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 478 (1985); Walden, 571 U.S. at 284; cf. Calphalon, 228 F.3d at 722 (the mere existence of a contract between the defendant and an Ohio citizen was insufficient to confer personal jurisdiction over defendant); Cunningham v. Sunice, Inc., No. M201801129COAR3CV, 2019 WL 4120742, at *4 (Tenn. Ct. App. Aug. 29, 2019) (employer's knowledge that employee resided in Tennessee was not enough to establish specific jurisdiction).

Branstetter argues that HAL has other "forum contacts" that are sufficient to establish specific jurisdiction over her negligence and unseaworthiness claims. (See ECF No. 21 at 6-10.) Specifically, HAL "recruit[s], hir[es], and employ[s]

---

[9] Arguments related to HAL's connections to Tennessee after Branstetter's injuries occurred are not persuasive because Branstetter's negligence and unseaworthiness claims could not arise from those post-hoc connections. (See ECF No. 21 at 4-5.)

Tennessee residents to sell its cruises in Tennessee"; HAL has "formed and maintain[ed] ongoing business relationships in Tennessee"; and HAL has a registered agent and is authorized to do business in Tennessee. (See ECF No. 21 at 6-8.)

Branstetter's argument is foreclosed by Bristol-Myers. Bristol-Myers explicitly rejected California's "sliding scale" approach, which balanced the connection between the forum and the specific claims at issue against the defendant's extensive forum contacts unrelated to those claims. See Bristol-Myers, 137 S. Ct. at 1781. Under the Sixth Circuit's Mohasco test, a defendant's extensive forum contacts might speak to whether a defendant "purposefully avail[ed]" itself of acting in the forum state, but the requirement that the cause of action arise from the defendant's activities in the state is a necessary criterion. See Harmer, 650 F. App'x at 272 (affirming district court in finding no specific jurisdiction because the plaintiff "founder[ed] on [Mohasco's] second requirement"). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." See Bristol-Myers, 137 S. Ct. at 1781 (citing Goodyear, 564 U.S. at 931).

The Court lacks specific jurisdiction over Branstetter's negligence and unseaworthiness claims.

## 2. Failure to Pay Maintenance and Cure

The Court assumes without deciding that Branstetter has adequately pled a claim for failure to pay maintenance and cure and that claim is not moot.[10] (Compl., ECF No. 1 ¶ 18.) Branstetter argues that HAL's selection of Tennessee medical professionals and participation in decisions about her medical treatment in Tennessee support her argument that HAL could "reasonably anticipate" being hailed into court in Tennessee. (See ECF No. 21 at 4–5.) Branstetter also argues that HAL's arrangement of her travel and payment for her travel expenses to Tennessee following her shipboard injuries support specific jurisdiction over HAL. (See id. at 8.) HAL argues that this Court does not have specific jurisdiction over Branstetter's maintenance and cure claim because decisions about paying maintenance and cure occur at HAL's principal place of business in Washington. (ECF No. 13 at 10; No. 23 at 7.) HAL argues that, although Branstetter might experience the effects of those

---

[10] Branstetter states in an affidavit attached to her response that HAL "has paid for all of the medical treatment that I have received as a result of my injuries" and that HAL "paid [her] back maintenance" after she filed this lawsuit. (ECF No. 21-1 ¶¶ 11, 14.) Complete payment does not moot a failure to pay a maintenance and cure claim because other damages may still be available. See Atl. Sounding Co. v. Townsend, 557 U.S. 404, 424 (2009) (punitive damages); Vaughan v. Atkinson, 369 U.S. 527, 530–31 (1962) (attorney's fees).

decisions in Tennessee, that is insufficient to establish specific jurisdiction. (See id.)

The Court does not have specific jurisdiction over Branstetter's failure to pay maintenance and cure claim. Courts have found that a defendant's payment of maintenance and cure in a forum state does not establish specific jurisdiction over a claim for failure to pay maintenance and cure. See, e.g., Zain v. Maersk Line, Ltd., No. 08-10782, 2008 WL 3058467, at *3 (E.D. Mich. July 31, 2008); Stewart v. Luedtke Eng'g Co., No. C 05-3467 SBA, 2006 WL 334644, at *4 (N.D. Cal. Feb. 10, 2006); Frisella v. Transoceanic Cable Ship Co., 181 F. Supp. 2d 644, 649 (E.D. La. 2002); Am. Overseas Marine Corp. v. Patterson, 632 So. 2d 1124, 1127 n.4 (Fla. Dist. Ct. App. 1994); Ortiz v. Wilmington Tr. Co., 1992 WL 474579, at *3 (D. Haw. 1992). Two of those courts rejected the arguments Branstetter is making now: that jurisdiction is proper because the defendant selected and paid for the plaintiff's medical treatment in the forum state and paid for travel expenses back to the forum state post-injury. See Zain, 2008 WL 3058467, at *1; Stewart, 2006 WL 334644, at *4.

Some courts have found, in part, that a defendant's post-injury payment of maintenance and cure to an individual in a forum state can establish specific personal jurisdiction over a claim for failure to pay maintenance and cure. See, e.g., Coats

17

v. Penrod Drilling Corp., 5 F.3d 877, 884 (5th Cir. 1993); Shipley v. Excell Marine Co., No. CIV.A. 07-3671, 2007 WL 3046638, at *4 (E.D. La. Oct. 18, 2007); Potts v. Cameron Offshore Boats, Inc., 401 F. Supp. 2d 733, 737 (S.D. Tex. 2005); Hall v. Envtl. Chem. Corp., 64 F. Supp. 2d 638, 642–43 (S.D. Tex. 1999). Those courts, however, did not hold that payment of maintenance and cure, alone, was sufficient to sustain specific jurisdiction. See Coats, 5 F.3d at 884; Shipley, 2007 WL 3046638, at *4; Potts, 401 F. Supp. 2d at 737 ("Paying maintenance and cure in another state is a purposeful contact with that state, although that action alone cannot sustain personal jurisdiction."). In finding jurisdiction, those courts relied on other, distinguishable facts, including the pre-injury, direct recruitment of the plaintiff in the forum state. See Coats, 5 F.3d at 882 (recruiting the plaintiff in Mississippi; agreeing to transport the plaintiff back to Mississippi; and returning the plaintiff to Mississippi for medical treatment paid for by the defendant were factors in finding specific jurisdiction); Potts, 401 F. Supp. 2d at 737 ("This Court has specific jurisdiction over a controversy stemming from the employment of a Texas worker hired through the efforts of a Texas recruiting company when the worker was treated in Texas, had his paychecks sent to a Texas company for some period of his employment, and received maintenance and cure

payments in Texas."); <u>Hall</u>, 64 F. Supp. 2d at 643 (holding that the defendant had sufficient minimum contacts with the forum state where the defendant targeted the forum state for employment prospects, which resulted in their hiring of the plaintiff; mailed the plaintiff's paychecks to the plaintiff's residence in the forum state; the plaintiff received medical care in the forum state (some of which was paid by the defendant); and the defendant again recruited the plaintiff for out-of-state employment during his recovery).

These cases are also distinguishable because the defendants initially paid maintenance and cure, and then stopped. Thus, arguably, the injury that led to the cause of action, stopping payment, happened within the state.[11] <u>See</u> <u>Coats</u>, 5 F.3d at 883 ("Finally, [the defendant] terminated its payment of [the plaintiff's] medical expenses while [the plaintiff] was hospitalized in Mississippi."); <u>Hall</u>, 64 F. Supp. 2d at 643 n.2 ("[O]ne of the major contentions driving Plaintiff's suit in this case — the termination of Plaintiff's medical benefits —

---

[11] The negligent failure to pay maintenance and cure is tortious conduct that makes the employer responsible for any aggravation of the injury suffered by the seaman. <u>See</u> <u>The Iroquois</u>, 194 U.S. 240 (1904). The duty to pay maintenance and cure commences when the seaman is injured and leaves the ship. <u>Morales v. Garijak, Inc.</u>, 829 F.2d 1355, 1988 AMC 1075 (5th Cir. 1987). The duty of payment is imposed on the seaman's employer. <u>Id.</u> That duty continues until the seaman reaches the point of "maximum cure." <u>Holmes v. J. Ray McDermott & Co.</u>, 734 F.2d 1110, 1985 AMC 2024 (5th Cir. 1984), <u>overruled on other grounds</u>, <u>Guevara v. Maritime Overseas Corp.</u>, 59 F.3d 1496 (5th Cir. 1995).

arose in Texas and is directly related to Defendant's activities within the Southern District of Texas.").

In the cases finding specific jurisdiction, there was a greater nexus among the forum State, the underlying claims, and the defendants' conduct, i.e., initial recruitment of the plaintiff in the forum state and actions by the defendant in the forum state that created the injury underlying the cause of action. Here, Branstetter does not allege that she was hired by HAL as a result of a recruitment process targeted specifically at Tennessee. She does not allege that HAL started to pay maintenance and cure and then stopped. (She alleges to the contrary – that HAL never paid maintenance and only paid back-maintenance after she filed this present lawsuit.) This case is more consistent with the cases that hold a defendant's payment of maintenance and cure in a forum state is not sufficient to establish specific jurisdiction. See Stewart, 2006 WL 334644, at *4 ("[T]he mere fact that [the defendant] fulfilled its [maintenance and cure] obligations . . . while Plaintiff was residing in California is not sufficient to establish personal jurisdiction over [the defendant] in this forum."); Ortiz, 1992 WL 474579, at *3 ("The mere fact that [the plaintiff] ended up in Hawaii after his alleged injury is not sufficient to justify an exercise of specific jurisdiction over the defendants.").

The Court does not have specific jurisdiction over Branstetter's failure to pay maintenance and cure claim.

## IV. Transfer

Branstetter asks as an alternative to dismissal that the Court transfer this case to the United States District Court for the Western District of Washington. (ECF No. 21 at 11.) HAL does not address this request in its reply brief.

A district court may "dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see also 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). The purpose of transferring cases is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)). Courts may transfer cases under § 1406(a) when they lack personal jurisdiction over a party in the transferor district. See Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962); Flynn v. Greg Anthony Constr. Co., 95 F. App'x 726, 738 (6th Cir. 2003). If the court decides to transfer

under § 1406(a), however, it must send the case to a "district or division in which it could have been brought." Goldlawr, 369 U.S. at 465 (quoting 28 U.S.C. § 1406(a)). That requires that the transferee forum have proper venue and personal jurisdiction over the parties. Id. at 466-67.

Both parties agree that HAL's principal place of business is in Seattle, Washington. (ECF No. 1 ¶ 3; No. 15-1 ¶ 6.). Courts have general personal jurisdiction over defendants where their principal place of business is. See Daimler, 571 U.S. at 137. The United States District Court for the Western District of Washington would have personal jurisdiction over HAL.

In federal question cases, venue is proper in:

(1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b); Thurman v. Michael W. Boyd Law Firm, No. 12-2709-JDT-tmp, 2013 WL 1103645, at *2 (W.D. Tenn. Mar. 15, 2013). Here, HAL would be subject to the court's personal jurisdiction in the United States District Court for the Western

District of Washington. Venue in that district would be proper under § 1391(b).

To spare Branstetter the delay and expense in re-filing this action and reserving HAL as a defendant, the Court finds that the interests of justice favor transfer to a proper venue instead of outright dismissal.

**V.   Conclusion**

For the foregoing reasons, the Court lacks personal jurisdiction and TRANSFERS this action to the United States District Court for the Western District of Washington.


So ordered this 20th day of December, 2019.


/s/   *Samuel H. Mays, Jr.*
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE